GRIFFIN, J.
Mark E. Clore [“Husband”] appeals a non-final temporary relief order in a dissolution proceeding. Husband contends that he has been required to pay more than 100% of his available net income in temporary support. We conclude that the record is inadequate to determine whether the trial court erred in the total amount of temporary support ordered, and remand for further proceedings.
On August 7, 2012, the trial court conducted a hearing on Wife’s motion for temporary relief. Wife testified that she had been married to Husband for twenty-six years, and that Husband left the home in November 2011. She explained that Husband “was solely responsible for [their] finances” prior to him leaving the home, that they had “decided when [they] first got married that [she] was to be home with the children,” and that “[h]e was the provider, the sole — as they say, the breadwinner of the home.” Wife stated that she went back to work part-time as a substitute teacher eleven years ago when their youngest son was in elementary school. The most she had made on an annual basis during the eleven years was “fifteen two,” and “[t]he only reason why it might go to seventeen” was due to an “extra bonus for FCAT money.”
Regarding Husband’s income history, Wife explained: “It’s fluctuated anywhere between one hundred to ninety thousand because between the work at the post office and his lawn care business.” When asked whether Husband had a base salary and overtime, Wife said: ‘Tes, he has base and overtime.” Also, when asked whether Husband had “ever made just his base salary,” Wife said: “No, not in thirty years.” She confirmed that he had always made more than his base salary.
Wife stated that, to her knowledge, there were three mortgages on the marital home. She confirmed that in her financial affidavit she “indicated with a footnote that [her] husband [was] currently sporadically paying the mortgages....” She stated that she had been receiving calls from creditors “[m]any times throughout the day” regarding non-payment of the mortgages. She also stated that the water had been turned off, and that she had incurred funds having the utilities put in her own name. She indicated that she had had to borrow funds from “[fjriends and family, mostly from family” to make ends meet; that she had had to use her “student loan for electric, water, just for the basics, and car;” and that she had had to apply for food stamps.
Wife stated that she and Husband had equity in the home, and that she would like to stay in the home. When asked “Have *1102 you asked your husband for support,” Wife answered:
Actually, I did. Before he left I asked him if he would stay for six months until my son — our son graduated, and he had told me that he didn’t care, he wanted to foreclose on the home. He stated to me that he was going to file bankruptcy and he didn’t care if I lived in a box and I should just be eating oatmeal.
Wife confirmed that her current need, after having reduced her expenses, and without paying the mortgages, was $1,672.00. She also confirmed that she was seeking $3,200.00 per month in temporary support so that she could be sure the parties’ mortgages were paid.
Husband testified that he was employed with the United States Postal Service. He identified one of his pay-stubs and confirmed that the pay-stub was for pay-period fifteen of 2012, that he had twenty-six pay-periods, and that the pay-stub showed that his year-to-date gross at the fifteenth pay-period was $36,177.83. When asked if dividing fifteen pay-periods into $36,000.00 would give the amount that he received per pay-period, Husband said: “That’s correct. It fluctuates.”
Husband acknowledged that he had not filed an updated financial affidavit, nor had he complied with Wife’s request to produce financial records at the hearing. When asked whether he was current on the mortgage payments, Husband said: “No, I’m not.”
With respect to Wife’s testimony that he had made $90,000, when asked whether that was the amount that he had always been earning at the Post Office, Husband said: “No, but like I said it fluctuated depending on overtime.” Husband confirmed that he had presented his most recent pay-stub, which accurately showed that he made $36,000.00 through fifteen pay-periods. Husband indicated that he didn’t anticipate any change in his earning potential and that there was “[v]ery little” overtime available.
Husband confirmed that, out of his paycheck, he was repaying a $699 Thrift Savings loan. He also was covering Wife’s health, dental, vision, and car insurance. When asked “How much is car insurance,” Husband said: “Three thirty.” He indicated that he paid that every month and that he was current. When asked whether he had any money available to give to Wife, Husband said:
No. After each and every month I come down to dollars. I have dollars after paying just the essential — trying to pay the insurance, maybe juggle paying the home equity line. I just can’t find it to pay. Fourteen hundred dollar mortgage bill. It’s just not there. I wish it was.
Also, when asked whether he had been making payments on joint marital credit cards, Husband said: “I’ve tried at times. It’s been a little while since I had. For the VISA — I’ve got two other ones.” He explained: “On the VISA, they’ve taken it out of my account.”
In closing argument, Wife’s counsel argued in part:
Your Honor, the reality is this gentleman left the home on his own volition. He stopped paying all marital bills except for sporadically paying — by his own admission he’s not current on the first mortgage. He’s paying the second and third. He’s caught that up to date. And the other thing that he pays monthly is the TSP loan which my client testified he took out in their marriage for a reasons she doesn’t know.
Other than that he has a five hundred dollar a month alleged rent payment to his friend that he is rented a room for, and nothing else. He cut the utilities off on my client during the pendency of this *1103 case. He’s refused to give her any funds. He’s told her that for all he cares, she can eat oatmeal, live in a box, he’s going to foreclose on the home, and he’s making good on that.
I don’t know what he’s doing making— his history of earnings last year was eighty-one thousand dollars. That’s what the W-2 shows just from the post office. If you take his pay stub it shows he’s on track for sixty-two. I don’t know what he’s doing with his money.
Husband’s counsel responded:
Thank you, Your Honor. Your Honor, my fault for not getting back to the lawn business, but Ms. Barbour took his deposition. He hasn’t [sic] the lawn business since 2002. He did it on the side with some other guys. He hasn’t made any money in that lawn business in ten years.
Your Honor, as I said I’ve got the expenses from his bank statements. I can hand to the Court. The man has made seventeen hundred dollars a month out of his net income just for the three mortgages, the auto insurance, the credit cards, and the IRS. On a monthly basis that’s what he’s paying. Okay. You know, he’s paying almost a thousand dollars out of his pay directly through the post office for the TSP, the wife’s health insurance, you know, et cetera. So he’s paying over twenty-six hundred dollars of net income a month just to meet marital expenses.
[[Image here]]
Other than that he’s cut to the bone to where he can’t afford to do anything else. He’s made as much of the payments as he can. He’s kept up the second, the third, and the TSP. And he’s making as much payments as he can towards the first mortgage.
[[Image here]]
There’s no money. He’s not living a good life like he was when he got all the overtime. And his own testimony was that he got all this overtime because they had to close down Daytona and move everything down here. So his hours were jacked up last year, and that’s why his income is where it is. Yes, he’s on track to make sixty-two thousand dollars, but when you take into consideration everything that he’s paying, Judge, the man doesn’t have any money to live on his own. He’s making a good faith effort — as I said right now he’s paying at least twenty-six hundred dollars per month towards marital bills. There’s nothing left.
The trial court found:
Okay. Well, the purpose of temporary relief is so the parties can, you know, maintain something resembling the status quo during the pendency of the litigation.
The status quo during — when they were married was that she was living in the home and not on food stamps so that’s kind of what we’re trying to maintain here.
The husband makes at least sixty-two thousand dollars a year. His expenses on the financial affidavit are not reliable .... on facts on the ground. It’s either how it was or how it might be in the future, you know, toupee maintenance aside.
So the mortgages need to be paid until you guys agree or I order that the house be sold or you guys can decide that you really don’t have — it really doesn’t make sense to the keep the house. You guys let it go into foreclosure, and then he’s got a lot more money available to pay spousal support.
Well, then what I’ll do is I will order that the husband keep the mortgages current and he’ll pay them directly. I *1104 find that he has the ability to pay them, and he can pay them directly. But he will pay them each and every month and get them current until further order of the Court or agreement by the parties. I don’t know whether it makes sense to keep this house.
I also know that if the mortgage — if a foreclosure hasn’t been filed yet, it could be years before someone actually gets thrown out. But, you know, I’m not here to decide that for you guys today. But she can stay in the house, and it needs to be — the mortgage needs to be paid for. She’s responsible for the utilities. He’s going to maintain the health insurance that he’s been paying for, and he’s going to pay a thousand dollars a month in additional support. And I find that he has the ability to do that.
Thereafter, on September 2, 2012, the trial court entered a temporary relief order consistent with its oral order. In part, the court found:
B. That the Court finds the Husband’s income to be approximately $62,000.00 per year and the Wife’s income to be approximately $17,000.00 per year.
Husband filed a motion to vacate order and motion for reconsideration, which the trial court denied.
The problem we see with the temporary support ordered is that it appears to exhaust Husband’s income, as found by the trial court to be $62,000 per year, and as reflected on the pay-stub admitted in evidence. See Hotaling v. Hotaling, 962 So.2d 1048, 1050-51 (Fla. 2d DCA 2007) (“ ‘[A]ppellate courts are reluctant to disturb the judgment of a trial court in respect to financial awards in marital cases,’ but such an award will be reversed where it ‘is not supported by substantial, competent evidence’ ” (quoting Sokol v. Sokol, 441 So.2d 682, 684 (Fla. 2d DCA 1988))). Importantly, “[a] financial award which requires one party to pay alimony or marital obligations in excess of that party’s ability to pay constitutes an award which is not supported by substantial, competent evidence.” Hotaling at 1051. As such, “ ‘a trial court cannot enter a temporary [financial] award that exceeds or nearly exhausts a party’s income’ because it would abuse its discretion by doing so.” Id. (quoting Bolton v. Bolton, 898 So.2d 1084, 1084 (Fla. 4th DCA 2005)). Husband argues that the temporary financial award in the instant case exhausts his income, leaving him with no money to meet his essential needs. Pointing to his pay-stub that was admitted into evidence, Husband asserts, that while the trial court relied on the information on the pay-stub to ascertain his gross income, it failed to determine his net income. Wife counters that her testimony that Husband’s income “was historically greater than his base salary and sufficient to pay their marital expenses was competent, substantial evidence that permitted the trial court to properly find that [he] could meet the financial obligations imposed on him by the temporary order, especially in light of [his] own testimony that his income fluctuated.”
The pay-stub, the piece of record evidence relied upon by the trial court, contains information from which to calculate the following:
Net Year-to-Date Income for Fifteen of Twenty-Six Pay-Periods = $36,157.83 (Gross Year-to-Date Income for Fifteen of Twenty-Six Pay-Periods)-$13,571.14 (Year-to-Date With-holdings for Fifteen of Twenty-Six Pay-Periods) = $22,586.69;
Average Net Income Per Pay-Period = $22,586.69 (Net Year-to-Date Income for Fifteen of Twenty-Six Pay-Periods) /15 Pay Periods = $1,505.78;
Estimated Annual Net Income = $1,505.78 (Average Net Income Per *1105 Pay-Period) * 26 Pay-Periods = $39,-150.28;
Estimated Monthly Net Income = $39,150.28 (Estimated Annual Net Income)/12 months = $3,262.52.
In order to determine Husband’s monthly net income available to live on, the following amounts need to be deducted from his Estimated Monthly Net Income: mortgage payments, car insurance premium, and the $1000.00 alimony payment. Doing so,
Husband’s Monthly Net Income Available to Live On = $3,262.52 (Estimated Monthly Net Income)-$l,400.00 (1st Mortgage Payment)-$440.00 (2nd & 3rd Mortgage Payments)-$330.00 (Car Insurance Premium)-$1000.00 (Alimony Payment) = $92,52.
The temporary relief order appears to nearly exhaust Husband’s net income. Without an updated financial affidavit of Husband or discovery from Husband concerning his actual income and expenditures, it is unclear, however, whether the trial court erred. Accordingly, we vacate the current temporary relief order and remand for Husband to make full and current disclosure of his income and expenses, for the trial court to re-evaluate temporary support in light of better information and to enter a new order.
ORDER VACATED; REMANDED.
ORFINGER, C.J., and SAWAYA, J., concur.